HALL v. FRANK et al.

(Circuit Court of Appeals, Second Circuit. January 13, 1913.)

No. 100.

PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—BEDSTEAD.

The Hall and Tilley patent, No. 625,164, for bedstead fastenings, is of narrow scope, and must be limited to the precise device described and shown. As so limited, *held* not infringed by the device of the Frank patent, No. 650,311.

Appeal from the District Court of the United States for the Eastern District of New York; Thomas I. Chatfield, Judge.

Suit in equity by Frank A. Hall against David Frank and John Trounstine, doing business as the Greenpoint Metallic Bed Company. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 195 Fed. 946.

The decree of the District Court dismissed the bill, which charged that the defendants infringed letters patent No. 625,164 granted, May 16, 1899, to Frank A. Hall and E. F. Tilley for bedstead fastenings.

Isaac B. Owens, of New York City, for appellant.

Charles C. Gill, of New York City, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The Hall and Tilley patent in suit was granted May 16, 1899, the application being filed August 24, 1898. The invention relates to bedstead fastenings in which the side rails of the frame are joined to the posts by means of coacting hooks and pins in which the fastening is made rigid and unbreakable by constructing the two parts so that a binding action is produced between them in addition to the connection of the hooks and pins. The essential feature of the invention consists in fastening the upright posts and the side bars together by locking them at two points and causing them to bind against each other at a side point intermediate the locking points.

The only claim in issue is claim 4, which is as follows:

"4. A bedstead-fastening, comprising a post-section, and a rail-section, the post-section being provided with a hook at each end and with a wedge-like surface intermediate of the hooks, the said wedge-like surface being inclined from its upper to its lower end in a direction away from the post, and the other section provided with pins for engaging the hooks, and with an abutment intermediate of the pins for engaging the cam-surface, substantially as described."

The elements of the claim are:

First. A post-section, being provided with a hook at each end and with a wedge-like surface intermediate of the hooks being inclined from its upper to its lower end in a direction away from the post.

Second. A rail-section provided with pins for engaging the hooks and with an abutment intermediate of the pins for engaging the cam-surface.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In every bedstead, whether it be in three pieces or five, whether it be made of wood or metal, the cross-bars and side rails must be securely and detachably fastened and the means and appliances for doing this, as shown by the prior art, were very numerous. With the introduction of. metallic bedsteads the problem was altered somewhat by the change from wood to iron, but, generally speaking, it was the same. The record contains some thirty prior patents and publications showing how earlier patentees had dealt with the fastening problem and proving that in this art, as in similar arts, when it was necessary to unite two parts detachably, hooks and pins were used, the hooks being on the posts and the pins on the rails or vice versa.

The Bernstein patents show every feature of the Hall structure except the wedging feature. This method of holding two pieces together tightly was very old in mechanics and had frequently been used in the bed-making art. Thus, Turner, in 1870, patented a bedstead, one of his claims being for:

"The wedge-shaped or inclined fastening hook, its supporting plate and the semi-circular or curved holding-rib, cast in one piece of metal, substantially as and for the purposes set forth."

It is unnecessary to consider the prior art in detail, for it cannot be denied that the invention, at best, is a very narrow one and that the claim, if sustained at all, must be limited to the precise method described and shown. All that Hall and Tilley did was to apply the well known wedge principle to the Bernstein hooks. The range of equivalents is so narrow that an infringer must use substantially the. exact combination shown. So construed, the claim is not infringed by the defendants. Their beds are made under a patent granted to David Frank May 22, 1900, although the actual structure differs in some minor details from the drawings and description of the patent.

Judge Chatfield has carefully considered the question of infringement and as we agree with him in the conclusion reached, no useful purpose will be subserved by entering into the details upon which the conclusion rests.

The charge of infringement. was made to depend largely upon defects in the casting of the outer edge of the rail-plate which approximates closely to the intermediate abutment *16* of the patent. As soon as this contention was made, the defendant changed the plate by removing the surplus metal directly between the upper and lower pins. We understand that it is admitted that the beds as now made by the defendants, having no abutment intermediate the pins, do not infringe claim *4*. The metal so removed performed no useful function; its presence at the point in question was probably accidental; at any rate the fastening works as well, if not better, without it. It is said that in 1900 the complainant wrote defendants complaining of their infringement of the Hall and Tilley patent and that the latter answered indicating that they would confer further with the patentees. The defendants swear that they never received such a letter and have no recollection of writing. one in reply. None of the letters is produced and nothing of importance can be predicated of this testimony. But assume that the letter was received and answered as the complainant

asserts, the fact remains that for over seven years the defendants continued to make and sell their beds with no word of complaint or remonstrance from the complainant. The defendants held a patent covering the beds they were manufacturing and they were justified in assuming that they could manufacture these beds without injury to any one. Had they been informed that the complaint against them rested upon the fact that some of their castings were defective, they presumptively would have made the change and thus have saved the annoyance of the litigation. Even if it were held that some of these defective castings infringed the claim, it would be most inequitable to permit a decree even for nominal damages to go against the defendants, when they gained nothing by retaining the defective castings and discontinued their use the moment they ascertained the basis of complainant's grievance.

The decree is affirmed with costs.