## MATHER v. FORD MOTOR CO.

### No. 14892.

District Court, E. D. Michigan, S. D.

April 16, 1941.

Ralph S. Binns, of Detroit, Mich., for plaintiff.

Bodman, Longley, Bogle, Middleton & Farley, of Detroit, Mich. (I. Joseph Farley and Thomas J. Hughes, both of Detroit, Mich., of counsel), for defendant.

O'BRIEN, District Judge.

The plaintiff herein brought an action at law to recover $250,000 damages allegedly caused by defendant's infringement of plaintiff's United States Letters Patent No. 1,320,775, dated November 4, 1919, which expired November 4, 1936. The suit was instituted on the 4th day of August, 1937, and defendant's answer filed October 1, 1937. In its answer the defendant pleaded the legal defenses of invalidity and infringement, as well as the equitable defenses of laches, acquiescence and estoppel.

During the early part of 1939 the defendant moved this court for and obtained an order transferring the equitable defenses aforesaid to the equity side of the court for hearing by the court sitting in equity as a chancellor in advance of any trial at law, in accordance with the provisions of Sec. 274b of the Judicial Code, U.S.C.A. Title 28, § 398. Subsequently, a hearing of these equitable defenses was had by the court, at which hearing testimony and evidence bearing solely upon such defenses were presented.

The patent in suit expired approximately nine months prior to the institution of this suit. It relates to a support for the headlamp of an automobile, and the automobile headlamps manufactured and sold by the defendant are charged by the plaintiff to infringe said patent.

■ It is conclusively established by the evidence that as early as March, 1926, the defendant began the manufacture and sale of the type of lamp devices which the plaintiff alleged constituted an infringement of the patent. Such manufacture therefore began more than ten years prior to the expiration of the patent in suit and more than eleven years prior to the filing of the declaration in this cause. During the period from March 1, 1926, until November 4, 1936, the date of expiration of the patent in suit, defendant actually produced 18,995,754 alleged infringing structures, and during the period from December 1, 1927, to October 31, 1936, the defendant expended large sums of money—over one and one-half million dollars, in land improvements, buildings, machinery, tools and factory and power equipment at its headlamp plant in Flat Rock, Michigan, where the accused lamps were manufactured. These expenditures naturally resulted in defendant materially changing its position. Likewise the manufacture and sale by defendant of over eighteen million of the alleged infringing

devices constituted a very material change in defendant's position because of the necessity for defendant, in order to safeguard the good will of its business, to supply required service and replacements parts for these millions of lamps in actual use by its customers, and the purchasing public. Moreover, a holding of infringement in this case against defendant would in effect make infringing the mere use of millions of the devices in the hands of the purchasing public, many of whom had purchased Ford automobiles equipped with the alleged infringing devices more than six years prior to the institution of the present action. The manufacture and sale of these devices would be barred by the patent statute of limitation but the use thereof would not be.

From 1909 until 1928 the plaintiff was chief engineer of the Graham Paige Company, an automobile manufacturing concern of Detroit, Michigan. He left the employ of the company in September or October, 1928, and during the last year of his employment was consulting engineer of the company. He testified he had lived all of his lifetime in the City of Detroit and that during those years he had seen a number of Ford cars on the streets of Detroit and that the trade papers carried a pretty good description of the defendant's cars. He also testified that he had seen cut-out models of the Ford automobiles as well as display boards showing all the parts of the car in various cities. Furthermore, plaintiff's counsel admitted that plaintiff discovered defendant's alleged infringement early. Nevertheless, plaintiff stood idly by for more than eleven years without taking any steps to assert his rights, during all of which time the defendant had built millions of the alleged infringing structures, coupled with a vast outlay of money for improving and expanding its plant for the production of the alleged infringing structures, as well as for the special tools and machinery necessary to fabricate its accused lamps.

■ Plaintiff contends that as the defendant Ford Motor Company would have made some kind of lamps in any event for its cars, the moneys spent for production of the infringing devices cannot be held to be such a change in defendant's position as to constitute an equitable estoppel.

I find this contention to be without merit as defendant's witnesses testified without contradiction that it would have been a very simple matter for defendant to have gone to a different construction had the question of infringement been raised at any time during plaintiff's long period of silence.

The plaintiff seeks to explain this long delay and thus excuse his lack of diligence by stating that in 1929 he consulted a patent attorney (who he, three to six months later, learned was counsel for a rival automobile company that was at the time making automobile headlamps similar to the lamps here accused) who advised him that the construction there considered did not infringe and that because of this advice he assumed the structure here involved likewise did not infringe. He testified that at the time he actually learned of that attorney's association with the competitor automobile company he had no funds and therefore made no effort to consult other counsel who probably might not be biased. No other or further explanation was given by the plaintiff for his failure to earlier institute the instant suit.

■ If this were a suit originally brought in equity it is definitely established that plaintiff by reason of his laches and acquiescence would be estopped to recover. Window Glass Machine Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645; Ford v. Huff, 5 Cir., 296 F. 652; Dwight & Floyd Sintering Co. v. Greenawalt, 2 Cir., 27 F. 2d 823; Woodmanse & Hewitt Mfg. Co. v. Williams, 6 Cir., 68 F. 489; Banker v. Ford Motor Co., 3 Cir., 69 F.2d 665; Universal Coin Lock Co. v. American Sanitary Lock Co. et al., 7 Cir., 104 F.2d 781.

■ It is elementary that laches and estoppel are equitable defenses. The Act of March 3, 1915, c. 90, 38 Stat. 956, 28 U.S. C.A. § 398, provides: " * * * In all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of seeking the relief prayed for in such answer or plea."

■■ The above quoted section of the statute definitely authorizes equitable defenses in actions at law theretofore only applicable in equity. Ford v. Huff, 5 Cir., 296 F. 652, certiorari denied, 266 U.S. 602, 45 S.Ct. 90, 69 L.Ed. 462; Banker v. Ford Motor Co., 3 Cir., 69 F.2d 665.

The Supreme Court of the United States in the case of Liberty Oil Co. v. Condon National Bank et al., 260 U.S. 235, at page 242, 43 S.Ct. 118, at page 121, 67 L.Ed.

**592**

232, approved the practice of first disposing of equitable defenses presented in actions at law, Chief Justice Taft stating: "Where an equitable defense is interposed to a suit at law, the equitable issue raised should first be disposed of as in a court of equity, and then, if an issue at law remains, it is triable to a jury. Massie v. Stradford, 17 Ohio St. 596; Dodsworth v. Hopple, 33 Ohio St. 16, 18; Taylor v. [Standard] Brick Co., 66 Ohio St. 360, 366, 64 N.E. 428; Sutherland, Code Pl. and Pr. § 1157. The equitable defense makes the issue equitable, and it is to be tried to the judge as a chancellor. The right of trial by jury is preserved exactly as it was at common law. The same order is preserved as under the system of separate courts. If a defendant at law had an equitable defense, he resorted to a bill in equity to enjoin the suit at law, until he could make his equitable defense effective by a hearing before the chancellor. The hearing on that bill was before the chancellor, and not before a jury, and, if the prayer of the bill was granted, the injunction against the suit at law was made perpetual, and no jury trial ensued. If the injunction was denied, the suit at law proceeded to verdict and judgment. This was the practice in the courts of law and chancery in England when our Constitution and the Seventh Amendment were adopted, and it is in the light of such practice that the Seventh Amendment is to be construed."

The practice of so disposing of equitable defenses in actions at law was subsequently followed in the Ford v. Huff and the Banker v. Ford Motor Co. cases, supra.

Plaintiff's conduct in the premises clearly justifies the conclusion that he did not consider defendant's devices an infringement of the patent in suit and that he acquiesced in the manufacture thereof by the defendant. Consequently, it would be inequitable at this late date to permit a recovery by the plaintiff when the material evidence in the case shows that the defendant, during the more than eleven-year period of plaintiff's absolute silence, expended large sums of money in materially changing its plant and equipment to produce the device here in controversy.

Accordingly the Court under the provisions of Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, adopts and makes a part of this opinion the following findings of fact and conclusions of law:

## Findings of Facts

1. The plaintiff, Gurdon C. Mather of Detroit, Michigan, has title to the patent in suit No. 1,320,775 and the defendant Ford Motor Company is a corporation of Delaware having an established place of business in the Eastern District of Michigan, Southern Division.

2. Jurisdiction of the Court is under the patent laws of the United States.

3. This case was originally started as an action at law in trespass on the case, the declaration having been filed on August 4, 1937, plaintiff claiming damages for alleged infringement of United States Letters Patent No. 1,320,775 granted November 4, 1919 and which expired by operation of law November 4, 1936.

4. Defendant pleaded laches, acquiesence and estoppel as defenses and in accordance with the established practice, the case was set down for hearing solely on the defendant's equitable defenses under Section 274b of the Judicial Code.

5. On the proofs it was established that defendant began the manufacture of the type of devices which plaintiff claimed to constitute an infringement of his patent as early as March 1, 1926, more than ten years prior to the expiration of the patent in suit and over eleven years prior to the filing of the declaration in this cause.

6. Defendant's manufacture and sale of the alleged infringing devices beginning March 1, 1926, was open and notorious, millions of the defendant's automobiles having been sold extensively throughout the entire country having been widely advertised and exhibited in all cities of the United States.

7. Plaintiff admitted that there was no concealment of defendant's construction from him and that he had every opportunity to examine these constructions.

8. Plaintiff claims that he was advised by a patent attorney as well as by a lamp manufacturer that constructions of the type manufactured by defendant and now alleged by plaintiff to infringe, did not constitute an infringement of plaintiff's patent. This advice and information was given to the plaintiff in 1929.

9. Plaintiff claims that some months after he received this advice from the patent attorney he learned that said attorney was in the employ of one of the automotive companies and plaintiff intimated that such ad-

vice was perhaps biased by said attorney's employment by another automotive manufacturing company.

10. Plaintiff's conduct shows that he accepted and acted upon said advice and continued to act upon it even after receiving the later information concerning the said attorney's other clients and the possible bias of the opinion given to him.

11. During the period from March 1, 1926, to the date of expiration of the patent in November 4, 1936, the defendant manufactured approximately eighteen million of the alleged infringing devices. These devices were all mounted in plain view upon the defendant's Ford automobiles and were in daily use throughout the entire nation by millions of purchasers of defendant's automobiles.

12. At the time defendant began its manufacture of the types of lamps alleged to infringe in March, 1926, plaintiff was engaged as engineer in the plant of the Graham-Paige Company located in Detroit, Michigan, and certainly had knowledge of the types of constructions embodied by defendant in the head lamps of its automobiles, or had every opportunity to obtain such knowledge.

13. Had plaintiff notified defendant promptly of his charge of infringement, defendant's engineers who testified could readily have changed the type of construction of the head lamp manufactured by defendant and defendant could have adopted some different structure that could not properly be charged to constitute an infringement.

14. All of the eighteen million lamps manufactured by defendant were constructed by it at its lamp manufacturing plant at Flat Rock, Michigan, and during the period of ten years of manufacture defendant expended more than $1,500,000 for the purchase of machinery, equipment and plant facilities.

15. The continued manufacture and sale by defendant of such tremendous quantities of alleged infringing devices while plaintiff stood idly by and by his long continued silence acquiesced in such manufacture, clearly resulted in a very material change in defendant's position. This is especially true because of the fact that defendant is under the moral obligation to provide service and replacement parts to the purchasers of such automobiles, therefore, under the law, each and every of the millions of purchasers of defendant's Ford automobiles would, if plaintiff's charge of infringement were well founded, be an infringer of plaintiff's patent because of the use by the owner of the automobile of the alleged infringing construction.

16. The expenditure by defendant of more than $1,500,000 for machinery, tools, plant facilities, dies and other equipment for the manufacture of the devices alleged to infringe, also constitutes a very material change in defendant's position.

17. Plaintiff's long silence, acquiescence and delay in the face of the continued widespread public sale and distribution by defendant, with not only no effort at concealment but with widespread publicity, constitutes inexcusable neglect.

## Conclusions of Law

1. Plaintiff's long silence and delay constitutes laches that precludes any recovery by plaintiff.

2. Plaintiff's long silence and delay constitutes acquiescence and plaintiff is equitably estopped from further prosecution of his alleged cause of action against defendant.

3. Defendant's material change of position by the manufacture of approximately eighteen million of the alleged infringing devices while plaintiff remained silent and quiescent and permitted these millions of devices to be placed in the hands of millions of the defendant's customers, constitutes such a material change in defendant's position as to create an equitable estoppel against plaintiff's alleged cause of action.

4. Defendant's expenditure of over $1,500,000 in plant equipment and facilities, machinery, tools and dies for the manufacture of the accused devices, also constitutes an equitable estoppel that precludes plaintiff from maintaining his alleged cause of action.

5. Defendant's equitable defenses of laches, acquiescence and estoppel are sustained and plaintiff's declaration and action are dismissed.

A decree in conformity with the foregoing may be presented for signature on or before May 1, 1941.