ROME GRADER & MACHINERY CORPORATION v. J. D. ADAMS MFG. CO.

No. 8134.

Circuit Court of Appeals, Seventh Circuit.
May 17, 1943.

618

Frank M. Slough, of Cleveland, Ohio, and Ralph G. Lockwood, of Indianapolis, Ind., for appellant.

James A. Ross and Verne A. Trask, both of Indianapolis, Ind. (Ross, McCord, Ice & Miller and Schley & Trask, all of Indianapolis, Ind., of counsel), for appellee.

Before EVANS, SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff sued for infringement of Gledhill Reissue No. 16,624, originally granted March 3, 1925, reissued May 17, 1927, covering a road grader embodying, as an essential element, a specified crank-and-link mechanism for use in adjusting the blade-supporting draw-bar horizontally of the machine, so that the blade may be so manipulated as to grade relatively steep banks or slopes. Plaintiff charged infringement beginning in early 1931, in defendant's model 121 and its smaller mate, model 22. In defence, defendant averred, and the court decreed, plaintiff estopped to maintain the suit by reason of delay and laches on the part of itself and its predecessor in title. This appeal followed.

At the time defendant originally produced the two models, the patent was owned by the Revere Co. On April 1, 1931, its patent counsel wrote defendant that the two graders infringed, threatening "prompt and vigorous steps." Defendant denied liability, asserting that if the patent could properly be construed as broad enough to cover the two machines, it was invalid. Other letters passed between the parties discussing at great length the patent and the asserted infringement, culminating in one from Revere to the effect that, perhaps, it had not been correctly informed as to the details of construction and the mode of operation of defendant's machines and that it desired an opportunity to inspect them. Defendant on August 23, 1932, named two places, within a reasonable distance of Revere, where Model 22 was in use. With this the correspondence terminated; to all intents and purposes, the matter of infringement had been dropped.

Defendant, obviously reasonably believing that Revere had abandoned its charge, continued to manufacture, openly and extensively, the graders complained of and expanded its line of the accused type, putting new ones on the market sometime in the middle of 1935.

Plaintiff, in January, 1935, took over the patent and Revere's road-grader business. Subsequently, January 6, 1936, six months after the introduction of defendant's Models 125, 124, 105 and 104 and as defendant was about to introduce Models 50 and 51, plaintiff wrote again charging infringement. This letter was similar to others written at the same time to numerous manufacturers and signed by J. Merle Patterson, plaintiff's president, who, prior to the transfer from Revere to plaintiff, had been in charge of Revere's road-grader division. Defendant replied, directing attention to the earlier correspondence with Revere and suggesting that, after plaintiff had examined it, it would conclude that no charge of infringement could be

sustained. To this plaintiff made no reply; again, apparently, the charge was dropped. Thereupon, defendant continued to manufacture and sell openly additional models employing mechanism which had earlier been alleged to infringe.

Three years later, January 31, 1939, plaintiff renewed complaint, proposing to hold defendant accountable for all past and future infringements. Defendant again referred to its prior communications and reiterated its alleged justification. A desultory correspondence followed, spread over a period of a year and a half, plaintiff asserting and defendant denying. Finally, in September, 1940, plaintiff sued. During this last stage of letter-writing, plaintiff delayed three, four and six months in responding to defendant's letters.

From 1932 until suit was brought, defendant manufactured and sold 6,000 graders of the accused type, of the value of $20,000,000. It spent some $450,000 in advertising them and invested approximately $291,000 in developing new models of the same type and in expanding and equipping its plant to manufacture them. It set up and maintained equipment and facilities to supply parts for the machines and was subjected to the duty to take all necessary precautions to protect its customers from infringement suits.

■■ Mere delay, unaccompanied by other relevant factors, does not ordinarily constitute laches. Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 104 F.2d 781, 782; Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645, 650; Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526. To be an effective bar, it must be both inexcusable and prejudicial to the defendant. Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 104 F.2d 781; Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 3 Cir., 64 F.2d 185. Thus, when deferment of action is so unusual as to appear unreasonable, upon plaintiff devolves the burden of disclosing and explaining the impediments to early action; of showing, if ignorant of his rights, how or why he has so long remained in ignorance and of revealing how and when he first acquired knowledge of the matters on which he relies as an excuse. Window Glass Machine Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645, 650; Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 104 F.2d 781,

782; see Hardt v. Heidweyer, 152 U.S. 547, 14 S.Ct. 671, 38 L.Ed. 548.

■■ Of necessity there must be a balancing of equities. It is seemingly unjust that any one should be allowed to infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it is inequitable for a person to sleep on his rights for years and lead another to think that the latter is safe in following counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made extensive investments and built up a prosperous business, penalize him and innocent investors for doing what might have been averted by timely action. Thus, there are two elements in effective laches; (1) Lack of diligence on the part of the plaintiff; (2) injury to defendant due to such lack. Westco-Chippewa Pump Co. v. Delaware Electric & Supp. Co., 3 Cir., 64 F. 2d 185, 186.

■ Defendant has expended great sums in reliance upon plaintiff's and its predecessor's inaction. Cf. Window Glass Machine Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645, 650; Mather v. Ford Motor Co., D.C.E.D.Mich., 40 F.Supp. 589, 590. At the same time, it has made and marketed other graders which do not infringe and could have centered manufacture upon them if infringement had been promptly asserted and established. But the apparent acquiescence of plaintiff and its predecessor, neither of whom was under disability or handicap, as the trial court justifiably found from the evidence, led defendant to believe that no necessity existed to incur the expense of changing over exclusively to the production of other types. Cf. Mather v. Ford Motor Co., D.C.E.D.Mich., 40 F.Supp. 589, 591.

Defendant's reliance upon plaintiff's inaction was fortified by the opinion of reputable counsel that its graders did not infringe. After correspondence with plaintiff and its counsel and subsequent inaction it may well have assumed that plaintiff's advisers had reached the same conclusion as its own. Westco-Chippewa Pump Co. v. Delaware Elec. & Supp. Co., 3 Cir., 64 F.2d 185, 187; Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 104 F.2d 781.

■ True, plaintiff had been in existence only five years when the suit was instituted, but its predecessor, Revere, under the same

directing head, had also slept on its rights for four years previously. Under these circumstances, plaintiff is chargeable with the sum total of the laches of itself and of its predecessor. Geo. J. Meyer Mfg. Co. v. Miller Mfg. Co., 7 Cir., 24 F.2d 505, 506; Gillons v. Shell Co., 9 Cir., 86 F.2d 600, 605; Westinghouse E. & M. Co. v. Jeffrey-DeWitt Insulator Co., 2 Cir., 22 F. 2d 277, 278.

■ Plaintiff seeks to justify. its delay. With regard to the correspondence in 1931 and 1932, it asserts it was excused from acting because defendant, in letters, made misrepresentations of fact which misled it and induced it to refrain from prosecuting its claim and that this is such evidence of bad faith as to prevent defendant from raising or relying upon estoppel. It avers that, in its early correspondence, defendant claimed that the alleged infringing mechanism, developed for a "high lift" grader which could grade steep banks and slopes, had been used in its 1921 grader, preceding Gledhill, and that this assertion was false and intentional. The evidence is somewhat confusing but, at the most, we find nothing in the way of actual, intentional misrepresentation. On the contrary, defendant's willingness to submit its graders to examination by Revere and designation of a place where they might be examined is refutation of any assertion that defendant intentionally misrepresented its devices. An examination of the correspondence indicates that asserted similarity of defendant's early grader to the patented mechanism was only one of many reasons advanced by defendant for noninfringement. It relied also upon extensive references to the prior art and insisted that only exercise of mechanical skill was reflected by the claims of the patent. The trial court was amply justified by the evidence in finding that Revere did not cease to press its claims against defendant because of the latter's reference to its early grader and the cut thereof appearing in its catalogue, in face of the undisputed fact that plaintiff failed to take advantage of defendant's proffer of opportunity to examine the actual machine. No more was heard from Revere. It is not unreasonable to assume that Revere inspected the machines and concluded they did not infringe. On the other hand, if Revere neglected to inspect and to ascertain definitely whether there was infringement, and to proceed accordingly, the fault

was its own. To cease correspondence abruptly, after the exchange of lengthy letters, especially since no satisfactory basis for agreement had been evinced by the correspondence, could reasonably lead to no conclusion other than that Revere agreed with plaintiff that its claim was baseless.

■ As a matter of further excuse, plaintiff insists that Revere believed that defendant had abandoned manufacture of alleged infringing graders. The asserted basis for this contention is that defendant had put on the market a noninfringing grader which could grade a bank at a sharp angle, from which Revere concluded that defendant had abandoned the alleged infringing graders. However, in its correspondence, defendant always insisted and constantly reiterated that it had a right to make the graders complained of and never receded from this position. Nor is there evidence that Revere made any effort to check on this supposed abandonment, though defendant always supplied all information requested and though the testimony indicates that from 1932 to 1934 there were 50 per cent more sales made of so-called infringing graders than in 1931; that production of allegedly infringing graders from 1932 to 1935 was about 60 per cent of the production from 1934 to 1941, and that all this, a reasonably careful investigation would have disclosed. Further, there is evidence that Patterson, Revere's general manager and plaintiff's president, knew that defendant had not discontinued its alleged infringing graders, at least as late as 1934.

■ As excuse for its failure to act after notice by plaintiff to defendant in 1936, plaintiff contends that defendant's reply that it was not infringing reflected a deliberate intention to infringe and that, due to the necessity of organizing the activities of the new corporation and carrying on its business, plaintiff was unable to follow up the matter until 1939. This to us is painfully illogical and inadequate. Rather it was entirely reasonable for defendant to conclude that, following its reply to plaintiff's 1936 letter, plaintiff had become convinced, as had Revere, that it had no valid claim. To approve plaintiff's plea that it did not have time to protect its rights while defendant expended large sums of money under the reasonable assumption that there was no infringement does not appeal to us as equitable. See

Hall v. Frank, D.C.E.D.N.Y., 195 F. 946 affirmed, 2 Cir., 202 F. 213; Universal Coin Lock Co. v. American Sanitary Lock Co., 7 Cir., 104 F.2d 781; Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645.

Plaintiff has moved that we remand the cause to permit taking additional evidence in view of allegedly newly discovered evidence.

In 1931-1932, as we have seen, approximately nine years before this suit was instituted, Revere notified defendant that its graders, Models 121 and 22, infringed the patent. In the correspondence following, asserting that any improvement shown over the prior art was merely the exercise of mechanical skill, defendant referred to its 1921 grader, which it claimed embodied the principles of Gledhill and antedated it. In addition to describing the mechanical similarities between its model and the Gledhill claims, defendant sent Revere a copy of its 1921 catalogue illustrating its grader.

It is this illustration and defendant's claims as to the operation depicted which plaintiff asserts were misleading. It insists that at the time of the correspondence, Revere believed from defendant's representations and the picture that defendant's 1921 grader was capable of achieving the same result as Gledhill and that, therefore, there was no infringement by defendant's Models 121 and 22. Plaintiff now claims, however, that it has, since the trial, discovered an old 1921 model grader and, upon examining it, found that defendant misrepresented the functions of its 1921 grader and that the catalogue picture was deceiving.

■ To secure a rehearing on newly discovered evidence, two questions must be answered affirmatively. Root v. Hobbs Mfg. Co., D.C.S.D.N.Y., 55 F.2d 301; Gairing Tool Co. v. Eclipse Co., 6 Cir., 48 F. 2d 73. (1) Has plaintiff exercised due diligence at all times in its efforts to secure the newly discovered evidence? (2) Will such evidence be of such weight or importance as to necessitate a different conclusion? If either of these questions can be answered in the negative, the motion must be denied. Bassick Mfg. Co. v. Adams Grease Corp., 2 Cir., 54 F.2d 285; Toledo Scale Co. v. Computing Co., 261 U. S. 399, 43 S.Ct. 458, 67 L.Ed. 719; Franc, Strohmenger & Cowan, Inc. v. Forch-heimer, 6 Cir., 32 F.2d 696; Barrett Co. v. Selden Co., D.C.W.D.Pa., 48 F.2d 620; Root v. Hobbs Mfg. Co., D.C.S.D.N.Y., 55 F.2d 301; Hicks v. Otto, C.C.S.D.N.Y., 85 F. 728.

■ There is no evidence that plaintiff made any attempt to find a model of defendant's 1921 grader until after the present suit was started and tried, nine years after defendant was first accused of infringing. This lack of interest in the 1921 grader was exhibited despite the fact that the machine had been the subject of dispute from virtually the beginning of the controversy. Only after the present suit had been instituted and plaintiff's claims endangered by its failure to assert its rights promptly, did plaintiff suddenly begin casting about for evidence as to this grader. This is the proverbial grasping at a straw, after years have elapsed, during which a reasonably diligent person would have acted.

As to the effect of defendant's 1921 model grader on the decision of the District Court, it is apparent from what we have said that there was neither misleading of plaintiff nor intentional misrepresentation by defendant. The considerable space and time defendant devoted in the 1931-1932 correspondence to assertion that Gledhill was invalid because anticipated by the prior art and because he had achieved exercise of mere mechanical skill indicate the widespread limits of the controversy. Further after defendant had referred to its 1921 model grader, and sent the picture of it, and had complied with every request for information, Revere asked to see defendant's accused graders and defendant afforded it opportunity to do so. Its failure to act reflects no reliance upon defendant's claims as to the 1921 model grader. Further, plaintiff's reiteration of infringement by defendant in 1936 indicated that it had not been misled. Indeed, Revere's manager, later president of plaintiff, testified that the reason Revere ceased accusation against defendant was that it thought defendant had abandoned the alleged infringing models, not because it had been deceived as to the character of the device claimed to infringe.

Defendant had expressed an opinion that its 1921 grader anticipated Gledhill. Whether this was a correct assumption was a question for the courts, and if plaintiff failed to examine such a grader within a

reasonable time, it is only its own failure to act which brings injury upon its head.

The motion to remand is denied and the judgment affirmed.