## LUKENS STEEL CO. v. AMERICAN LOCOMOTIVE CO.

No. 219, Docket 22265.

United States Court of Appeals Second Circuit.

Argued April 15, 1952.

Decided July 1, 1952.

Alfred C. Aurich, Philadelphia, Pa., for appellant; Synnestvedt & Lechner, Philadelphia, Pa., and Burgess, Ryan & Hicks, New York City, of counsel.

Kenyon & Kenyon, New York City, for appellee; W. Houston Kenyon, Jr., and Francis T. Carr, New York City, of counsel.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

940

SWAN, Chief Judge.

This is a patent infringement suit involving patent No. 2,078,056, issued April 20, 1937 to Everett Chapman and thereafter assigned to the plaintiff. In addition to the usual defenses of invalidity and non-infringement the defendant pleaded estoppel, and by counterclaim asserted that the patent was held upon a constructive trust. By agreement the issues raised by the estoppel defense and the counterclaim were tried in advance of the other issues. The defense of estoppel was sustained and a decree was entered dismissing both the complaint and the counterclaim. The plaintiff only has appealed.

The facts are fully stated in the district court's opinion, 99 F.Supp. 442. Familiarity with them will be assumed and we shall advert to them only so far as seems essential to an understanding of the points to be discussed.

The patent in suit covers a spline-type frame or block for high compression engines used in Diesel locomotives. The defendant, for brevity called Alco, requested the plaintiff, called Lukens, to prepare "some sort of a proposition through which we could arrange to have Mr. Chapman design for us the engine structure of a four-cycle 'V' type Diesel engine." On June 21, 1943 Lukens' president replied to Alco that he had talked with Mr. Chapman and "We will be very glad to undertake this proposition without any cost to your good Company." Thereafter the engineering departments of both companies, aided by Mr. Chapman, worked together in a sincere effort to develop a satisfactory engine design. Early in August 1943 Lukens and Chapman submitted a design which Alco's engineers approved. The submitted design apparently embodied the Chapman patent but nothing was said about the patent at that time, nor thereafter until 1948. During the intervening years the manufacturing capacity of Alco's Auburn plant had been increased and only the frames beyond its own capacity to produce were purchased from Lukens. In

November 1948 demand was made by Lukens for payment of a royalty for the patented element in all frames manufactured by Alco, and on February 8, 1950 the present suit was filed, praying for an injunction and an accounting for profits and damages. The district court held that Lukens was estopped from interfering with Alco's use of the engine block design and that Alco should be deemed to possess an irrevocable license to use the design.

■ The appellant contends that the court erred in applying the doctrine of estoppel because Alco obtained knowledge of the existence of the patent before the engine design was submitted to it.[1] We assume that Alco is chargeable with whatever knowledge Davenport had concerning the patent. We shall also assume that he was told by Chapman that Lukens was negotiating for a purchase of the patent, and that in February 1946 a copy of the patent was in the files of Alco's patent department, as the appellant contends. Nevertheless, we think the doctrine of estoppel was properly applicable, even if Alco knew of the existence of the patent and the assignment of it to Lukens, because Lukens' conduct was such as to lead Alco reasonably to believe that the patent would not be used against it. In early August 1943 when the design embodying the patent spline was submitted to Alco nothing was said about the patent, although Lukens knew that Alco intended to manufacture frames in accordance with the design. At the October 13, 1943 meeting between Davenport and Wolcott, Lukens' president,—a date subsequent to Lukens' acquisition of the patent from Chapman—no mention of it was made, although Wolcott testified that he knew that Alco was contemplating the manufacture of "some of the spline-type engine frames in its own plant." Lukens had no knowledge that Chapman had ever mentioned the patent to Davenport, yet for more than four and a half years Lukens did nothing to suggest that it might assert its patent rights against Alco. During the interim Alco had spent over half a million dollars to expand its capacity to

1. The findings as to this appear in the opinion, 99 F.Supp. 442, at pages 445–446; see also the last paragraph on page 448 and the first paragraph on page 449.

produce the frames and had produced 252 frames valued at approximately $3,500 each. In these circumstances we think Alco could reasonably infer that Lukens had given its consent to manufacture of the frame without restriction, particularly in view of the substantial amount of business given Lukens by Alco. The district court's finding that the parties were engaged in "a business relationship involving mutual confidence and mutual effort in which each party hoped to profit"[2] is well justified. Silence in this atmosphere was misleading. The situation falls within the description of equitable estoppel as given in Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618:

> "* * * The vital principle, is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden * *"

See also George J. Meyer Mfg. Co. v. Miller Mfg. Co., 7 Cir., 24 F.2d 505, 508; Ford v. Huff, 5 Cir., 296 F. 652, 657; Mather v. Ford Motor Co., D.C.E.D.Mich., 40 F.Supp. 589.

■ Regardless of the confidential relationship, the decision can also be supported on the ground of (1) laches, and (2) implied license. As to the first, it is true that only some five years elapsed between the time Lukens learned of the infringement and the time it took affirmative action, while the period in most of the decided cases is longer.[3] But in the usual case the patentee merely delays bringing suit for an unreasonable time after he learns of the infringement. Here the assignee of the patent presented a design embodying the patent to the infringer knowing he would use it to maufacture the frames himself, and then stood idly by while the infringer embarked on a costly expansion program. In these circumstances the five year delay was unreasonable and the defense of laches is available to bar both the accounting and the injunction.[4] The infringer's knowledge of the patent does not bar this defense.[5]

■ Such knowledge is likewise immaterial if affirmance be rested on the ground of implied license. Lukens' presentation of the design to Alco for its acceptance and use carried with it the intention to make the grant effective and to permit Alco to enjoy the full use thereof. A grant necessarily carries with it that without which the thing granted cannot be enjoyed.[6] As the Supreme Court said in De Forest Radio, Telephone & Telegraph Co. v. United States, 273 U.S. 236, 241, 47 S.Ct. 366, 367, 71 L.Ed. 625:

> "No formal granting of a license is necessary in order to give it effect. Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a li-

2. 99 F.Supp. at page 446.

3. See, e.g., Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 27 F.2d 823, 827, 13 yrs.; Gillons v. Shell Co., 9 Cir., 86 F. 2d 600, 607, 610, certiorari denied 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532, 9 yrs.; Banker v. Ford Motor Co., 3 Cir., 69 F. 2d 665, 16 yrs.; Dock & Terminal Engineering Co. v. Pennsylvania R. Co., 3 Cir., 82 F.2d 19, 12 yrs.; Young v. General Electric Co., D.C.N.D.Ill., 96 F. Supp. 109, 139, 6 yrs.

4. For a discussion of when laches will bar an injunction as well as an accounting, see Menendez v. Holt, 128 U.S. 514, 524, 9 S.Ct. 143, 32 L.Ed. 526; A. R.

Mosler & Co. v. Lurie, 2 Cir., 209 F. 364, 370.

5. See, e.g. Brennan v. Hawley Products Co., 7 Cir., 182 F.2d 945, certiorari denied 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 631; Universal Coin Lock Co. v. American Sanitary Coin Lock Co., 7 Cir., 104 F.2d 781, 782; Dock & Terminal Engineering Co. v. Pennsylvania R. Co., 3 Cir., 82 F. 2d 19; Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 3 Cir., 284 F. 645, 647–650. Compare Shaffer v. Rector Well Equipment Co., 5 Cir., 155 F.2d 344.

6. Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 6 Cir., 101 F. 831, 836.

cense, and a defense to an action for a tort."

See also Withington-Cooley Mfg. Co. v. Kinney, 6 Cir., 68 F. 500, 507; Anderson v. Eiler, 3 Cir., 50 F. 775; 2 Robinson, Patents, 1890 ed., § 834, p. 641.

For the foregoing reasons the decree is affirmed with costs.

FRANK, Circuit Judge, concurs in the result.