**B & M CORPORATION, A Louisiana Corporation, Plaintiff,**

v.

**Ewell Clark MILLER, An Individual, Defendant.**

Civ. A. No. 2898.

United States District Court
W. D. Kentucky, Louisville Division.

March 18, 1957.

Robert F. Davis, Stevens, Davis, Miller & Mosher, Washington, D. C., Arthur F. Robert, Louisville, Ky., for plaintiff.

William H. Parmelee, Christy, Parmelee & Strickland, Pittsburgh, Pa., Fred J. Karem, Karem & Karem, Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The complaint for patent infringement was filed in this Court on March 21, 1955. B & M Corporation, a Louisiana corporation with its principal place of business at Houma, Louisiana, is the plaintiff, and Ewell Clark Miller, an individual doing business under the firm name of Kool-Vent Metal Awning Company of Kentucky, is the nominal defendant. The complaint alleges that U. S. Letters Patent No. 2,542,919 were issued to Dewey J. Freeman February 20, 1951 (the application for allowance of the patent was filed June 13, 1946). Subsequent to the granting or the issuance of the Freeman patent, 85 per cent of the rights vested under said patent were assigned to Lionel Babin, Sr., and 15 per cent to Dudley Melancon, which interests were later conveyed to the plaintiff, B & M Corporation, the owner of the Letters Patent at the time of the filing of the complaint. It was alleged that the defendant Miller had been for a long time prior to, and was at the time of, the filing of the complaint infringing the Freeman patent by making, selling and using rigid type sheet metal awnings embodying the patent invention. A preliminary and final injunction, together with an accounting for profits and damages, was demanded.

The defendant Miller filed an answer consisting of "First Defense" and "Second Defense." His "First Defense" was that the complaint failed to state a claim upon which relief could be granted. The "Second Defense" denied the material allegations of the complaint. By an amended answer, filed August 26, 1955, both the first and second defenses in the original answer were stricken, and the defendant filed what amounts to a substituted answer consisting of thirteen numbered paragraphs. At a pre-trial proceeding held on March 8, 1956, it developed by stipulation that the Kool-Vent Metal Awning Company of America assumed the defense of this case pursuant to a contract between it and the defendant Miller.

The substituted answer denied the validity of the Freeman patent; alleged affirmatively that Freeman was not the sole or first inventor of the subject matter of his patent, and that the invention was known and used prior to the alleged invention; that it was invalid because the alleged inventions of said patent were known, shown, described, and patented for more than a year prior to the filing of the application for the patent.

Paragraph 10 of the substituted answer is as follows: "Defendant further avers that plaintiff and its predecessors in title were estopped from maintaining suit by virtue of an agreement made between the above mentioned Lionel Babin and George A. Houseman on or about the 4th day of November, 1940, recorded in the U. S. Patent Office, Liber 186, page 282, of Transfers of Patents, under date of December 4, 1940."

Paragraph 11 of defendant's substituted answer is as follows: "Defendant further avers that plaintiff has long known of the alleged acts of infringement by the defendant and those in privity with the defendant, but notwithstanding such knowledge has heretofore acquiesced in the aforesaid practice of the defendant and is estopped by such acquiescence and laches from maintaining this suit."

On May 17, 1956, the defendant, pursuant to Rule 42(b) of the Rules of Civil Procedure, 28 U.S.C.A., moved the Court for a separate trial of the defenses raised in Paragraphs 10 and 11 above of the answer. The defendant's motion was not resisted by the plaintiff, and the case

came on for trial to the Court on May 28, 1956.

From the testimony heard in Court and depositions and exhibits filed, the Court makes the following findings of fact with respect to the pleas of estoppel constituting Paragraphs 10 and 11 of the substituted answer. The Court has assumed, for the purposes of considering the pleas of estoppel, the validity of the Freeman patent; the validity of the assignment of that patent to the plaintiff; and that the defendant Miller, in making, using and vending metal awnings in the State of Kentucky under the trade name of Kool-Vent Metal Awning Company of Kentucky, infringed the Freeman patent; and that plaintiff is entitled to relief, unless the plaintiff is estopped in the prosecution of this action by the terms of the alleged agreement entered into between Lionel Babin, Sr., and George A. Houseman, or by reason of laches and acquiescence as claimed in Paragraph 11 of the answer above set forth.

### Findings of Fact

(1) George A. Houseman was granted Re-Issue Patent No. 20,975 January 10, 1939, based on original U. S. Letters Patent No. 2,098,705 granted November 9, 1937. On the 4th day of November, 1940, Lionel Babin, Sr., acquired from Houseman an exclusive license for the State of Louisiana, by a writing which evidenced a sale, assignment, and transfer unto Babin of "all the right, title and interest in, and to, the said invention as secured to me (Houseman) for the State of Louisiana, United States of America, by said Letters Patent and all re-issue patent rights, division patent rights, or continuation patent rights that may be granted me (Houseman) for the State of Louisiana mentioned above, * * * for and in no other places, the same to be held by Lionel Babin within and throughout the above specified territory, but not elsewhere, for his own use and behoof, and of his legal representatives, for the remaining portion of the term which said Letters Patent and above stated future patents run, as fully and entirely as the same would have been had by me (Houseman) had this grant or sale not been made * * *."

Assignment of any of the patent right granted to Babin to any other party was prohibited, except with written consent of Houseman; but it was provided that Babin would otherwise "have the right to profit by his patent right acquired by this grant by his own efforts, the efforts of his agents and any party or parties he licenses during the life of this grant."

The contract contained a final paragraph entitled,

"Cooperative Clause:

"In addition to the agreement and conditions above set forth, the grantor agrees to pass on information he gets in the way of sales, manufacturing information relative to the manufacture and sale of metal awnings protected by the patent mentioned in this grant, to the grantee, whether same can be protected or not, in return for which the grantee agrees to give the grantor information he learns relative to the sale and manufacture of the metal awnings protected by the patents mentioned in this grant, whether his information can be protected or not, and that he furthermore authorizes his grantor to pass this information on to other grantees or agents, or licensees of the grantor; and further it is mutually agreed that should grantor discover any kind of improvements, patentable or not, during the term of this grant, they shall inure to the use of the grantee at no additional consideration and likewise any improvement perfected by grantee whether patented by him or not, shall inure to the benefit of the grantor whether patented by him or not, and upon termination of this contract, for any cause whatsoever, it shall revert back to the grantor and become the sole property thereof."

The substance of this clause, with respect to Houseman's acquisition of any improvement in Babin's operation under the Houseman patent, could be more briefly summarized as obligating Babin to give Houseman information which

Babin learned relative to the sale and manufacture of the metal awnings, and authorizing Houseman to pass such information on to other grantees, agents or licensees. It further provided that any improvement perfected by Babin, whether patented by him or not, should inure to the benefit of Houseman, and upon termination of the contract it should revert back to Houseman and become his sole property.

(2) November 9, 1946, by written assignment, George A. Houseman sold, assigned, and transferred to Meyer Harrison and Samuel B. Korman, their heirs, legal representatives and assigns, all of the right, title, and interest owned by Houseman in U. S. Letters Patent Re-Issue No. 20,975, granted January 10, 1939, on original Patent No. 2,098,705 of November 9, 1937, and other patent right not here material for the State of Kentucky.

(3) By a document styled "License Agreement," dated May 10, 1949, the Kool-Vent Metal Awning Corporation of America, a corporation caused to be organized by Meyer Harrison and Samuel B. Korman, licensed E. C. Miller, then doing business in Kentucky as Kool-Vent Metal Awning Company of Kentucky, under the Houseman Re-Issue Patent No. 20,975, under the Matthews Re-Issue Patent No. 21,053, Patent No. 2,307,272, Patent No. 2,442,891, and "certain applications for patent now pending." E. C. Miller, the defendant in this action, was engaged in business in Kentucky through himself and through dealers and agents established by him, and continued in that business until the 23rd day of November, 1954, on which date there was executed between Kool-Vent Metal Awning Corporation of America and Miller a termination agreement. Each released and forever discharged the other by reason of their business connection and relationship under the License Agreement of May 10, 1949.

(4) Meanwhile, on March 4, 1954, the plaintiff, B & M Corporation, through Lionel Babin, Sr., its president, advised E. C. Miller by letter that the aluminum awning then being manufactured and sold by Miller infringed B & M Corporation's Patent No. 2,542,919 (the Freeman Patent). As far back as May 12, 1948, Lionel Babin, Sr., then engaged in business as Kool-Vent Metal Awning Company of Louisiana, was in correspondence with Miller, explaining to him about the clips and other features in a pending patent, evidently referring to the application then pending for the Freeman Patent.

(5) By an option agreement, dated December 14, 1944, George A. Houseman gave to Meyer Harrison and Samuel B. Korman an option to purchase the sole and exclusive right under the Houseman Re-Issue Patent in various states and territories, which the parties have referred to as comprising 38 states but excluding Louisiana.

(6) Under date of November 12, 1947, Meyer Harrison and Samuel B. Korman conveyed the rights they had obtained from Houseman in the various states and territories to the Kool-Vent Metal Awning Corporation of America.

(7) Beginning approximately in 1945, as reflected by the correspondence between Lionel Babin, Sr., and officers of the Kool-Vent Metal Awning Corporation of America, there began a friendly and cooperative relationship, centering about their mutual interest in furthering the sale, advertising and manufacture of metal awnings. Mr. Babin visited the Pittsburgh Plant of Kool-Vent of America and he and a craftsman named H. M. Helt discussed the use of the metal clips, which ultimately became the genius of the Freeman Patent. In his testimony in this case, Babin states that he had a funny feeling while talking to Helt about the clips because he realized that Helt had the idea which Babin and Freeman were discussing and which resulted in embodiment into the Freeman Patent. This friendly and cooperative relationship between these parties extended through 1952.

(8) It is apparent that Babin was not desirous of Kool-Vent of America learn-

ing about the application for the Freeman Patent. Mr. Harrison testified that he knew nothing about this application until the patent was granted. It is further evidenced that Babin refrained from claiming any infringement on the Freeman Patent until 1954, after the expiration of the Matthews Patent in February of that year and the expiration of the Houseman Patent which expired in March, 1954. Both Babin and Kool-Vent of America, after May, 1949, paid the National Ventilated Awning Company a substantial amount in settlement of claimed infringement by the Houseman Patent of the Matthews Patent, under the former of which Babin and Kool-Vent of America were then licensees. It is conclusively shown that for a considerable period of time Babin and his companies sold and offered to sell the clips to various licensees of Kool-Vent of America after application had been made for the Freeman Patent and after Babin had knowledge that the manufacture of the metal awnings by the use of metal clips, as contemplated by the Freeman Patent, materially changed the method of construction of the metal awnings.

(9) The Court finds as a fact that the first knowledge Kool-Vent of America or its executive officers had of the Freeman Patent was about the time, or after, that patent issued in February of 1951.

Upon these facts, being found as the material facts necessary to a decision of the phase of the case presently before the Court, two questions arise:

(1) By the terms of the "Cooperative Clause" in the agreement between George A. Houseman and Lionel Babin, Sr., by which the latter acquired the assignment or license for the State of Louisiana, was Babin and is plaintiff, the present corporation, estopped from maintaining this action or seeking the relief demanded in the complaint?

(2) Did the cooperative conduct of Babin, as evidenced by the extended correspondence and indications therein of mutual cooperation, in promoting the manufacture and sale of Kool-Vent awnings, and the exchange of information relative to the use of the metal clips and change of construction, estop the plaintiff from seeking the relief demanded in this action?

Both are questions of law, therefore, the Court makes the following conclusions of law applicable to the above specified facts.

### Conclusions of Law

(1) The Court has jurisdiction of the subject matter and of the parties in this action, Title 28, Section 1332, United States Code Annotated.

(2) In the case of Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610, 614, 91 L.Ed. 563, the Supreme Court considered an exclusive license, in which the licensee agreed to assign to the licensor any improvement patent applicable to the patented machine, for the purpose of determining the validity of a clause in the license requiring the licensee to assign to licensor improvement patents, and held that such an agreement is enforceable. In that case, the Transwrap Corporation owned the patent on a machine which made transparent packages, simultaneously filled them with articles such as candy, and sealed them. During the life of the patent, Transwrap sold to Stokes the exclusive license to manufacture and sell the machine under the patents which Transwrap then owned or *might acquire* during the life of the license and of the patent. Stokes, the licensee, without the knowledge of Transwrap, obtained patents on improvements on the machine.

The Supreme Court said: "An improvement patent may, like a patent on a step in a process, have great strategic value. For it may, on expiration of the basic patent, be the key to a whole technology. One who holds it may therefore have a considerable competitive advantage. And one who assigns it and thereby loses negative command of the art may by reason of his assignment have suffered a real competitive handicap. For thereafter he will have to pay toll to the assignee, if he practices the invention."

The Supreme Court held that an improvement patent, being a legalized monopoly for a limited period like a basic patent, might be used in sale or assignment to acquire another patented right, and that either the basic or improvement patent might be used to acquire the other. Said the Court, "He is indeed using one legalized monopoly to acquire another legalized monopoly." Congress not having made illegal the acquisition of improvement patents by the owner of a basic patent and having sanctioned assignment of patents so long as violations of the anti-trust laws were avoided, "the end result is the same whether the owner of a basic patent uses a license to obtain the improvement patents or uses the wealth which he accumulates by exploiting his basic patent for that purpose." The holder of a basic patent, as licensor, when he acquires improvement patents and thereby extends his monopoly beyond its terms, may likewise lose the former value of his basic patent by failure to provide for an assignment of the improvement patent.

Under the teaching of the Transparent-Wrap case, supra, by the Cooperative Clause between Babin and Houseman, Babin was obligated to pass on to Houseman any information he learned relative to the manufacture of the awnings protected by Houseman's Patent, and Houseman was authorized to pass this information on to the Kool-Vent Metal Awning Corporation of America. Should Babin perfect any improvement, whether patented by him or not, in the manufacture of the awnings such knowledge of the improvement inured to the benefit of Houseman.

■ The plaintiff, B & M Corporation, takes no greater right under the Freeman Patent than Lionel Babin, Sr., had prior to the assignment of the patent to plaintiff. Richmond Screw Anchor Co. v. Bethlehem Steel Bridge Corp., 3 Cir., 287 F. 94.

No former license is necessary to give to the defendant or the Kool-Vent Corporation of America an implied license.

Keystone Type Foundry v. Fastpress Co., 2 Cir., 272 F. 242.

■ Any language used by the owner of the patent or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and is a defense to an action for tort. De Forest Radio, Telephone & Telegraph Co. v. United States, 273 U.S. 236, 47 S. Ct. 366, 71 L.Ed. 625; Withington-Cooley Mfg. Co. v. Kinney, 6 Cir., 68 F. 500. The Supreme Court, in Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618, said: "* * * The vital principle (equitable estoppel) is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden." See also Lukens Steel Co. v. American Locomotive Co., 2 Cir., 197 F.2d 939. In the case last referred to it was held that mutual confidence and mutual effort in which each party hoped to profit created an atmosphere in which silence was misleading.

■ In the case of Cubbison v. Delco Products Corp., D.C.Ohio, 29 F.Supp. 202, 206, Judge Nevin sustained a plea of estoppel by laches, announcing the well-settled rule that requires a patent owner who seeks equity to act with reasonable diligence to enforce his claimed rights against an alleged infringement. He there stated that where a patentee does not act with reasonable diligence and promptness he will be debarred in equity from any recovery. This case was affirmed per curiam, 6 Cir., 126 F.2d 466. The same District Judge, in the case of Remington-Rand, Inc., v. Acme Card System Co., D.C., 29 F.Supp. 192, 200, emphasizes the rule of long standing that, as respects the defense of estoppel by laches, each case must stand on its own facts. And that, while mere delay or acquiescence cannot defeat a remedy sought by the holder of a valid

patent, under the doctrine of reasonable diligence, and recognizing the equitable maxim that those who seek equity must do equity, the law recognizes that the right to relief may be defeated and should be denied where the acts and conduct, silence, or acquiescence lulls an infringer into security and induces him to incur expenses or suffer losses which he otherwise would not sustain. In such circumstances, the defense is complete. In that case, being of the opinion that the plaintiff had deliberately delayed in bringing suit, Judge Nevin denied relief to the holder of a valid patent. To the same effect is the case of Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 135 F.2d 617; Brennan v. Hawley Products Co., 7 Cir., 182 F.2d 945.

In the Brennan case, as in the case at Bar, a trial was had limited to the question of laches; the Court retained jurisdiction of the remaining issues for further consideration, if necessary, after disposing of the defense of laches. There, as in the case at Bar, the defendant had expended large sums of money expanding its business in advertising, all with the knowledge of the plaintiff. It was testified by Mr. Harrison, in the case at Bar, that the Kool-Vent Metal Awning Corporation of America had expended from four to six million dollars in advertising Kool-Vent metal awnings throughout the United States, and that mats for newspaper advertising and other forms of advertising had been furnished to the plaintiff by Kool-Vent after the Freeman Patent had been granted and prior to the expiration of the Houseman Patent.

In the case of Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 3 Cir., 64 F.2d 185, the defense of laches was upheld, and in that case the plaintiff had delayed for four years, without reasonable excuse, after obtaining a reissue patent before beginning legal proceedings on claimed infringement.

In the case of Shaffer v. Rector Well Equipment Co., 5 Cir., 155 F.2d 344, 346, it was said that the mere passage of time cannot constitute laches; another most essential element, which a defendant has the burden of showing, is that damage or prejudice has or will be suffered by that delay. The lower court had sustained the plea of laches and was reversed because there was no showing that the defendant had been lulled into any sense of security by the plaintiff. The reviewing court said, "It does not seem that an infringer, whose business was 'constantly spreading out and growing' out of the infringed manufacture of an article, could acquire a legal right to continue to trespass upon the rights of another merely because the other had attempted to get him to desist by persuasion rather than by resorting to litigation. * * * Repeated wilful trespasses confer no right to continue them."

■ This Court concludes that the "Cooperative Clause" of the contract between George A. Houseman and Lionel Babin, Sr., does not estop the plaintiff, B & M Corporation, as the present owner of the Freeman Patent, from prosecuting this action. There is no proof in the case that Houseman assigned to the Kool-Vent Metal Awning Corporation of America or its predecessors, as holders of a license under the Houseman Patent in 38 states, Houseman's right to the use of any improvement which Lionel Babin, Sr., might make or acquire in the sale or manufacture of the metal awnings protected by the Houseman Patent. Prior to his acquisition of the Freeman Patent, Babin held the same rights to make, use, and vend the awning protected by the Houseman Patent within the State of Louisiana which the Kool-Vent Company and its predecessors, as licensees, held in 38 states including Kentucky. The fact that Houseman, after licensing Babin in Louisiana, licensed Kool-Vent or its predecessors in 38 states did not set up between Babin and Kool-Vent such a relationship as obligated Babin to pass on, or allowed Kool-Vent to use, any improvement which Babin might make or procure from others.

■ The frequent association between Babin and Helt and their frequent

discussion of the improvement on the Houseman Patent, which culminated in the Freeman Patent, would lend themselves readily to a conclusion of estoppel were it not for the fact that Babin and Kool-Vent of America were each a holder of a license under the Houseman Patent without any obligation on the part of either to give to the other a full disclosure of his ideas and intentions. Laches in a patent infringement is a personal defense flowing from a relationship of the parties, 69 C.J.S., Patents, § 318, p. 937.

Consequently, this Court concludes that the plaintiff is not estopped by laches to claim its rights and benefits arising to it out of its acquisition of the Freeman Patent. It is, therefore, held that neither Paragraphs 10 nor 11 of the defendant's answer constituted a valid defense. Proper judgment or order to this effect will be tendered by plaintiff's counsel on notice to the opposing counsel.